JOSEPH W. GRIFFITHS, appellant,

*v.*

BURTIS W. GRIFFITHS et al., respondents.

[Submitted May 28th, 1948. Decided September 3d, 1948.]

On appeal from a decree of the Court of Chancery advised by Vice-Chancellor Grimshaw, who filed the following opinion:

"The complainant, Joseph W. Griffiths, is a widower aged about 77 years. He is the father of the defendant Burtis W. Griffiths, whose wife, Marjorie H. Griffiths, is the other defendant.

"The wife of the complainant died in 1941. By her will, in which she named complainant as executor, she devised to complainant the real estate on Brookside Avenue in the Borough of Allendale, Bergen County, which is the subject-matter of this litigation. The real estate had at one time belonged to Joseph W. Griffiths, the complainant, who had transferred it to his wife.

752

"To assist him in the settlement of his wife's estate, Griffiths retained John E. Selser, a lawyer who was the legal advisor and friend of both Joseph W. Griffiths and his son, Burtis W. Griffiths, with both of whom he was on terms of social intimacy. It was during his visits to Selser's office in connection with his wife's estate that Joseph W. Griffiths had the discussions with Selser concerning his own property which resulted in the execution of the various instruments involved in this dispute.

"Griffiths was irritated because he was compelled to pay an inheritance tax on property which he felt belonged to him. He determined to put the title to the property in his son's name and instructed Selser to draw the necessary papers. Selser demurred, pointing out that to be effective the transfer would have to be complete and unconditional. He suggested that the son might die, the daughter might remarry and that the obligation to support Joseph W. Griffiths, might, under those circumstances, be forgotten. Griffiths was determined, but Mr. Selser finally persuaded him to execute in addition to a deed, two agreements which set forth at length the conditions under which the transfer was made.

"There are two deeds and two agreements. There is a deed from Joseph W. Griffiths, as executor of his wife's estate, to Selser's secretary and one from the secretary to Joseph W. Griffiths and Burtis W. Griffiths as joint tenants.

"One of the agreements between Joseph W. Griffiths and Burtis W. Griffiths and Marjorie H. Griffiths, his wife, after detailing the transfer of the real estate and certain personal property, contains a recital and agreement as follows:

" 'WHEREAS, the parties of the Second Part in receiving the transfer of title to the said real and personal property, acknowledge that the true beneficial interest therein shall and will remain in the said Joseph W. Griffiths for and during the term of his natural life, a right of control thereover having been given to the said Burtis W. Griffiths, to be exercised by him for the convenience and accommodation of the said Joseph W. Griffiths and not independent thereof;

" 'Now, THEREFORE, the parties hereto, in consideration of the covenants herein contained, do mutually agree to and with each other as follows:

" '1. That the said Burtis W. Griffiths and Marjorie H. Griffiths, his wife, do hereby receive a transfer of the title to real and personal

property made by the said Joseph W. Griffiths to Burtis W. Griffiths, with a full understanding that the right of control in title vested in the said Burtis W. Griffiths shall and will be exercised consistent with the interest, comfort and convenience of the said Joseph W. Griffiths and not independent thereof.

" '2. The said Joseph W. Griffiths does hereby intend that the title to the said real and personal property shall and will be vested in the said Burtis W. Griffiths to the extent and with the effect that the conveyances thereof purport to give, the said Joseph W. Griffiths reserving unto himself merely a beneficial interest in the nature of a trust for his care, comfort and convenience during the term of his natural life, fully understanding that the interests in title so conveyed by him shall and will pass by the proper will of the said Burtis W. Griffiths as if this trust did not exist, except during the lifetime of the said Marjorie H. Griffiths, wife of the said Burtis W. Griffiths, she assumes for herself the burdens of the trust herein assumed by the said Burtis W. Griffiths.

" '3. All the parties hereto agree that they, their heirs, executors, administrators and assigns, shall and will execute and deliver such instruments in the law as may be necessary at any time in the future to effectuate the provisions of this agreement and to guarantee the performance thereof in its each and every element.'

"The other agreement between the same parties recites the transfer of the real estate and then provides for its management in the following language:

" 'THEREFORE, THIS AGREEMENT WITNESSETH, that the parties hereto in consideration of the mutual covenants herein contained, do covenant and agree to and with each other, that the said Joseph W. Griffiths shall be and is hereby designated the manager of the properties hereinabove described, to collect the rents, issues and profits therefrom, and in his sole judgment to change the tenants therein, to fix the amount of rents, and to generally have supervision over the matters relating to the properties as if the same were solely his, and to apply the rents, issues and profits in his sole judgment toward the taxes and other charges against said properties, and should there be an excess of rents, issues and profits over and above the necessary carrying charges, to retain such excess as his sole and absolute property as compensation for services rendered by him as in this agreement set forth.

" 'This Agreement shall continue in full force and effect during the lifetime of the said Joseph W. Griffiths, or until the same shall be cancelled by mutual consent of the parties hereto, such cancellation to be evidenced in writing, clearly terminating the rights, benefits and duties herein set forth.

" 'The said Marjorie H. Griffiths, wife of the said Burtis W. Griffiths, joins this instrument because of the inchoate right of dower she may possess because of the right of survivorship in title possessed by her said husband.'

"The papers were all executed at the home of Burtis W. Griffiths, adjoining the property in dispute, on the night of August 31st, 1942.

"For some six months thereafter Joseph W. Griffiths continued to live on the property. Then in the early part of January, 1943, he went to Florida. He left suddenly, as a result, he says, of a dispute with his daughter-in-law's mother, who was a tenant in a portion of the property. In May of the same year he returned from Florida for a short time. He had received an offer of $10,000 for the property and desired to sell. His son refused to consent on the ground that the property was an investment which would be a protection for his father.

"Joseph W. Griffiths has at all times received the income from the property. It has been sufficient to support him. In addition, he has some $2,000 in cash.

"Following the refusal of Burtis W. Griffiths to consent to the sale of the property Joseph W. Griffiths consulted counsel and the present litigation followed.

"The bill is brought under the Declaratory Judgments Act, *R. S. 2:26–66*, &c. It seeks a decree compelling the defendants to join in a conveyance; a declaration as to the rights and interests of the complainant and defendants in the real estate and a cancellation of the agreements.

"By a bill to set aside the various instruments complainant could, if successful, obtain the relief he seeks. That being so the Declaratory Judgments Act is not available to him. *Empire Trust Co.* v. *Board of Commerce, &c., 124 N. J. Law 406; Provident Mutual Life Insurance Co., &c.,* v. *Unemployment Compensation Commission of New Jersey, 126 N. J. Law 348.*

"But disregarding the form of the bill and viewing it as a bill to set aside the various instruments, I am still unable to conclude that the complainant is entitled to relief. There is not the slightest evidence that the son occupied a dominant position in relation to his father. The testimony is undisputed that until the papers were practically ready for execution the son was unaware of his father's intention. Since the evidence does not establish that the defendant occupied

a dominant position the burden is upon the complainant in his attack upon the transfers and the question of independent advice does not arise. *Dill* v. *Dill, 118 N. J. Eq. 374; In re Fulper, 99 N. J. Eq. 293.*

"Complainant now says that he thought he was retaining the power to sell the property. If that is so there was no purpose to the transaction. Complainant was to have the income for life. If he was also going to control the disposition of the property why execute any instruments? Selser says that complainant, evidently because of his obsession about inheritance taxes, was determined upon an unconditional conveyance to his son and it was only because of Selser's insistence that complainant agreed to protect himself by the agreements. Selser was the friend of both parties and had no reason to favor either. Certainly had he desired to favor the son he would not have insisted on the execution of the agreements. And Joseph Griffiths agrees that it was Selser who wanted the agreements executed.

"I am satisfied that the instruments accurately set forth the intent and desire of the complainant. He wanted his son to have the title subject to his life estate, and that is what was accomplished. The transaction was entirely voluntary and was absolute in form. It cannot be revoked. *James* v. *Aller, 68 N. J. Eq. 666; Farley* v. *First Camden, &c., Co., 107 N. J. Eq. 272; First-National Bank, &c.,* v. *Keller, 122 N. J. Eq. 481.*

"I will advise a decree dismissing the bill."

*Mr. George F. Losche,* for the appellant.

*Messrs. Ford & Taylor,* for the respondents.

PER CURIAM.

The decree will be affirmed, for the reasons expressed in the opinion of Vice-Chancellor Grimshaw.

*For affirmance*—THE CHIEF-JUSTICE, BODINE, DONGES, HEHER, WACHENFELD, EASTWOOD, BURLING, JACOBS, WELLS, DILL, FREUND, McLEAN, SCHETTINO, JJ.   13.

*For reversal*—COLIE, J.   1.